**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| INDUSTRIAL SPECIALISTS, LLC AND | ) | |
| BRAND ENERGY SOLUTIONS, LLC, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| RICHARD REUTER, KENNETH | ) | |
| SHEPHERD, THOMAS BUCK, LOENBRO | ) | |
| EQUIPMENT, INC., AND RDS | ) | |
| INDUSTRIAL SERVICE, LLC, | ) | |
|     Defendants. | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Industrial Specialists, LLC ("ISI") and Brand Energy Solutions, LLC ("BES") file this Original Complaint against Defendants Richard Reuter ("Reuter"), Kenneth Shepherd ("Shepherd"), Thomas Buck ("Buck"), Loenbro Equipment, Inc. ("Loenbro"), and RDS Industrial Service, LLC ("RDS") (collectively, the "Defendants"), and respectfully state as follows:

**I.**
## NATURE OF THE ACTION

1.     This action is the result of the premeditated plan and actions taken by ISI and BES's former employees, Defendants Reuter, Shepherd, and Buck, to unlawfully violate their employment agreements and misappropriate ISI and BES's confidential and proprietary trade secrets and information to directly compete against ISI and BES for the behalf of Defendants Loenbro and RDS, who have facilitated and encouraged Reuter, Shepherd, and Buck's wrongdoing.

**II.**

**PARTIES**

2.      Plaintiff Industrial Specialists, LLC, is a Delaware limited liability company authorized and doing business in the State of Texas.

3.      Plaintiff Brand Energy Services, LLC is a Delaware limited liability company authorized and doing business in the State of Texas.

4.      Defendant Richard Reuter is an individual residing in Montana and may be served with process at his residence at 1109 24th Ave. SW, Great Falls, MT 59404 or wherever else he may be found.

5.      Defendant Kenneth Shepherd is an individual residing in Texas and may be served with process at his residence at 2465 County Road 4680, Boyd, TX 76023 or wherever else he may be found.

6.      Defendant Thomas Buck is an individual residing in Mississippi and may be served with process at his residence at 252 Mill Street Ext Lucedale, MS 39452 or wherever else he may be found.

7.      Defendant Loenbro Equipment, Inc. is a corporation organized and existing under the laws of Montana with its principal place of business at 1900 32nd Ave. NE, Black Eagle, MT 59414.  Loenbro is authorized to do business and does business in the State of Texas.  Loenbro may be served with process by serving its Texas registered agent for service of process, Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, TX 75201.

8.      Defendant RDS Industrial Service, LLC is a limited liability company organized and existing under the laws of Texas with its principal place of business at 8554 Katy Freeway, Suite 327, Houston, TX 77024 and a branch office at 1900 32nd Ave. NE, Black Eagle, MT

59414.  RDS may be served with process by serving its Texas registered agent for service of process, Edward S. Mattingly, 8554 Katy Freeway, Suite 327, Houston, TX 77024.

### III.
### VENUE AND JURISDICTION

9.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because ISI and BES's claims against the Defendants under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* raise a federal question. ISI and BES's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal question that they form part of the same case or controversy.

10.     Jurisdiction over non-resident Defendants is also proper under Texas Civil Practice & Remedies Code § 17.042.  All Defendants have conducted business in the state, have purposefully committed torts either in Texas or directed at Texas, and have recruited Texas residents for employment inside or outside of Texas.  Moreover, the individual Defendants all lived and worked in Texas or recently did so before being solicited for employment in or outside of Texas, RDS is based in Texas, and Loenbro is authorized to conduct business in Texas and in fact does conduct business in Texas.  Accordingly, all Defendants also are subject to general jurisdiction in Texas.

11.     Venue is proper in the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to ISI and BES's claims occurred in this District.

12.     All conditions precedent have been performed or have occurred.

### IV.
### BACKGROUND

13.     ISI and BES (collectively "Brand," where appropriate) are members of the BrandSafway group of companies, which are leading providers of access, specialized services

and shoring solutions to the industrial, commercial, infrastructure, oil and gas, and power generation markets.

14.     ISI and BES are diversified providers of specialty multi-craft industrial services to the North American industrial and downstream infrastructure markets.  Their industrial services include refractory services, metallizing, concrete sealing, industrial scaffolding for work access, industrial coating and painting, tank lining, abrasive blasting, industrial insulation, corrosion protection, weatherproofing, asbestos and non-asbestos-abatement and other related crafts.

15.     ISI and BES face significant competition within their markets.  Operating in highly competitive marketplaces, ISI and BES carefully guard their proprietary information regarding services, business plans, and customers.  They have invested a substantial amount of time, effort, and money developing pricing, techniques, and marketing and business development strategies that allow them to meet customers' needs at competitive prices, while still allowing themselves to make a profit.  ISI and BES's pricing and offerings are often customer-specific based on the services required by customers.  They have developed at great cost, both in dollars and working hours, pricing models based on information provided by customers and the costs associated with their processes.  Further, ISI and BES have formulated long-term objectives, plans, programs, and strategies designed to identify potential areas for growth and maximize their competitive position as providers of industrial services in the marketplace.

16.     The development and maintenance of confidential, trade secret, and proprietary business information is fundamental to ISI and BES's success. Their confidential and proprietary business information includes but is not limited to: (1) customer lists; (2) price lists; (3) equipment inventory; (4) organizational structure; (5) customer discounts; (6) customer service requirements; (7) unpublished financial statements and other financial information

including daily, weekly, monthly, annual, or other periodic reports on pricing, price lists, mark-up percentages, profitability information, budgets, projections, costs, equipment and equipment maintenance costs, profit and loss statements; (8) pricing and market strategy; (9) customer contact information; (10) management and personnel information, including specific abilities and capabilities of employees to perform particular types of work, skill level, crew mixes, salary, benefits and other compensation, policies and practices; and (9) sales and marketing information, including reports, strategies, techniques, plans and contracts (collectively, the "Confidential Information"). ISI and BES's Confidential Information is not known outside of themselves and gives them a competitive advantage.

17.    Richard Reuter, a former Senior Vice President of ISI, left the company's employ on May 26, 2017, and expressed a desire to join Loenbro, a company that purportedly did not compete with ISI.  Based on the information provided by Reuter and the information available at the time, ISI approved of Reuter going to work for Loenbro as its Chief Operating Officer.  This was significant because Reuter had an agreement that contained restrictive covenants that prohibited him from providing services to or working for any person or entity that competed with, was planning to compete with, or otherwise provided products or services similar to those provided by ISI.

18.    As a condition of his employment with ISI, Reuter signed and agreed to a Confidentiality, Non-Competition, Non-Solicitation Agreement and Invention Assignment Agreement ("Agreement"), with an effective date of August 13, 2014. See Exhibit 1, Reuter Agreement.

Section 1 of the Reuter Agreement, reads as follows:

(a)    Manager agrees that effective immediately and during and following Manager's employment with the Company, Manager shall hold in

strictest confidence and shall not make personal use of, nor disclose to any person, firm, corporation, partnership, agency, commission, institution, or other entity, any Trade Secret or other Confidential Information relating to any business, product or service of the Company. Concurrent with the execution of this Agreement, the Company has provided and promised to provide Confidential Information to Manager in exchange for Manager's promises and agreements to the terms set forth in this Agreement.

. . .

(d)     Manager acknowledges that the Company's Confidential Information and Trade Secrets have been created, discovered or developed by, or have otherwise become known to, the Company, or its information in which property rights have been assigned or otherwise conveyed to the Company. The Company and Manager specifically agree and acknowledge that any and all confidential information or Trade Secrets provided by the Company or otherwise obtained by Manager during the term of this Agreement is proprietary, unique and commercially sensitive in nature, and has been developed over time and reflects a substantial investment by the Company. Manager further acknowledges that the Trade Secrets provided by the Company are not a matter of public or general knowledge in the industry and that the Company derives economic value (actual or potential) from such information. Manager also acknowledges the Company maintains substantial secrecy concerning the Confidential Information and Trade Secrets and that, absent disclosure by the Company to Manager, he or she could not otherwise have readily ascertained by proper means, and/or have acquired knowledge of such Confidential information and Trade Secrets. See Exhibit 1, pp. 1-2.

Section 3 of the Reuter Agreement (Non-Competition), reads as follows:

(a)     The purpose of the provisions in Paragraph 1 of the Agreement is to protect the Company from unfair loss of goodwill and business advantage and to shield Manager from pressure to use or disclose Confidential Information or Trade Secrets or to trade on the goodwill belonging to the Company. Accordingly, in consideration of the Confidential Information or Trade Secrets provided to Manger as set forth in Paragraph 1 and to aid in the enforcement of Manager's covenants and agreements, during employment with the company and for a period of one (1) year after the voluntary or involuntary termination of Manager's employment with the Company for any reason, **Manager shall not, directly *or indirectly**, whether as a partner, investor, employee, team member, consultant, creditor, shareholder or otherwise, **become employed by**, provide services to, promote, participate, assist or engage in the organization , engineering, planning. Consultation, ownership, financing, management, operation, work or control of **any corporation, partnership, association, or other person or entity that directly competes with or is planning to directly compete with the Company or otherwise provides products or services similar to those provided by the**

-6-

**Company**, (including any prospective business of the Company to be developed or acquired that was proposed at the date of Manager's termination) **in the Restricted Area** (as defined herein) in the business of providing products and services of painting and industrial coating, abrasive blasting, metallizing, insulation and weatherproofing, asbestos and non-asbestos abatement, corrosion protection, refractory and fireproofing services, concrete sealing, tank lining, carpentry and the manufacturing, designing, marketing, renting, selling and assembling scaffolding, temporary work platforms.

(b)     As used in this Agreement, the "Restricted Area" is every county, city, municipality, parish or other locality within the United States, Canada, Mexico, Puerto Rico, wherein the Company sold, rented or provided, or attempted to sell, rent or provide its products or services, that were within Manager's management, operational or sales responsibility or within the responsibility of personnel directly reporting to Manager or any other country to which Manager had substantial exposure or about which Manager received Confidential Information during such employment with the Company, at any time during the last one (1) year of Manager's employment with the Company.

Section 4 of the Reuter Agreement (Non-Solicitation), reads as follows:

The purpose of the provisions in Paragraph 1 of the Agreement is to protect the Company from unfair loss of goodwill and business advantage and to shield Manager from pressure to use or disclose Confidential Information or Trade Secrets or to trade on the goodwill belonging to the Company. Accordingly, in consideration of the Confidential information or Trade Secrets provided to Manger as set forth in Paragraph 1 and to aid in the enforcement of Manager's covenants and agreements, during employment with the company and for a period of two (2) years after the voluntary or involuntary termination of Manager's employment with the Company, **Manager shall not, directly *or indirectly*,** on his or her own behalf or on behalf of any third party:

(a)     **recruit, solicit, hire, or attempt to recruit, solicit or hire any person who is employed by the Company or was employed by the Company at any time during the last one (1) year of Manager's employment with the Company, nor induce or attempt to induce any such employee to leave the employment of the Company.** Manager further acknowledges that such other employees of the Company may be similarly bound by agreements with the Company and that Manager shall not induce or attempt to induce, either directly or indirectly, a breach of the duties owed by such other employees to the Company.

(b)     **sell, rent, provide or attempt to sell, rent or provide any products or services in competition with or similar to those products or services which the Company sold, rented or provided,** or attempted or proposed to sell, rent or provide, during Manager's employment with the

Company, **to: (i) any person, company or other entity to whom Manager, or any employee reporting directly to Manager, sold, rented, provided** or attempted to sell, rent or provide **such Company products or services** at any time during the last one (1) year of Manger's employment with the Company, **or (ii) any person, company or other entity about whom Manager received Confidential Information while employed by the Company**, or (iii) any person, company or other entity with whom Manager had material contact during the last one (1) year of Manager's employment with the Company.

(c)   **divert away from the Company current, former or potential customers of the Company to whom Manager, or any employee reporting directly to Manager, sold, rented, or provided** or attempted or proposed to sell, rent or provide **the Company's products or services** at any time during the last one (1) year of Manager's employment at the Company, or about whom Manager received Confidential Information while employed by the Company, or with whom Manager had material contact during the last one (1) year of Manager's employment at the Company, nor seek to induce or encourage such customers to modify or not renew their business relationship with the Company.

See Exhibit 1, pp. 3-4.

19.     On June 27, 2018, Thomas Buck, an executive of BES, resigned and also commenced employment with Loenbro.  In addition, on July 6, 2018, Kenneth Shepherd, another executive of ISI left the company and likewise began employment with Loenbro.  Contrary to Reuter, these two employees did not seek approval from ISI or BES to commence working for Loenbro.  Buck and Shepherd had both worked with Mr. Reuter.

20.     As a condition of their employment with ISI and BES, respectively, Shepherd and Buck both also executed Confidentiality, Non-Competition, Non-Solicitation and Invention Assignment Agreements, with effective dates of February 28, 2017 and December 23, 2015, respectively. See Exhibit 2 (Shepherd Agreement) & Exhibit 3 (Buck Agreement). The Shepherd Agreement contained identical restrictive covenants as those present in Reuter's Agreement with the exception of the definition of "Restricted Area," which provided as follows:

As used in this Agreement, the 'Restricted Area' means: at any time during the last one (1) year of Manager's employment with the Company, every county, city, municipality, parish or other locality within the United States, Puerto Rico, Canada, Mexico or any other country where the Company sold, rented, or

-8-

provided, or attempted to sell, rent or provide its products or services that were within Manager's management, operational or sales responsibility or within the responsibility of personnel directly reporting to Manager.

Exhibit 2, p. 3.

21.     The Buck Agreement contained similar, yet different, non-competition and non-solicitation covenants and, given the different nature and type of confidential information and trade secrets shared with him, his confidentiality covenant likewise contained similar, yet different, restrictions.  His confidentiality restriction in Paragraph 1(a) required the following:

> Manager agrees that, effective immediately, during Manager's employment with the Company and for a period of one (1) year following the cessation of Manager's employment for any reason, Manager shall hold in strictest confidence and shall not use in a competitive manner, nor disclose to any person, firm, corporation, partnership, agency, commission, institution, or other entity that is engaged in or associated with business activities that are the same as, or substantially similar to, the Company's Business, any Trade Secret or other Confidential Information relating to any business, product or service of the Company, except as may be required in the course of performance of Manager's duties for the Company. Manager further agrees that if he or she is questioned about information subject to this Agreement by anyone not authorized to receive such information, Manager will promptly notify the Company. This Agreement does not limit any longer period of protection or the remedies available under applicable common or statutory law, which may impose longer duties of non-disclosure.

Exhibit 3, p. 1.

22.     The non-competition covenant in the Buck Agreement (Paragraph 3) prohibited the following:

> (a)   During employment with the Company and for a period of one (1) year after the voluntary or involuntary termination of Manager's employment with the Company for any reason, **Manager shall not enter into or engage in any employment or business which involves providing products and services similar to those provided by the Company** such as painting and industrial coating, metallizing, insulation and weatherproofing, asbestos and non-asbestos abatement, refractory services, concrete sealing, tank lining, carpentry and the manufacturing, designing, marketing, renting, selling and assembling scaffolding, temporary work platforms, designing, marketing, selling, renting, and assembling concrete forming and shoring equipment and other construction-related products and services, in the Restricted Area (as defined herein) **where doing so will**

**require Manager to provide the same or substantially the same services to a competitor** (including Manager or any business or competitive organization owned in whole or in part by Employee) **that Manager provided to the Company** during the last five years of Employee's employment. In the event that Manager's employment is terminated involuntarily without Cause (as defined herein), this non-competition restriction will remain in effect and shall be enforceable by the Company following said termination only for the number of months (not to exceed 12 months) equal to the number of months of salary paid to Manager as severance, if any, in conjunction with Manager's involuntary termination.

    (b)  As used in this Agreement, the "Restricted Area" is

        (1) Every county, city, municipality, parish or other locality within Canada or the United States, or any other country, wherein the Company sold, rented or provided, or attempted to sell, rent or provide its products or services, that were within Manager's management, operational or sales responsibility at any time during the last one (1) year of Manager's employment with the Company; or

        (2) A one hundred (100) mile radius from any of Company's current or former headquarters locations to which Manager reported within one (1) year preceding the date of his or her resignation or termination of employment; or

        (3) Any county in the state of Mississippi that was within Manager's management, operational or sales responsibility, at any time during the last one (1) year of Manager's employment with the Company; or

        (4) Any county in the state of Mississippi where Manager actively engaged in sales, service or marketing of the Company's products and services, or was assigned to perform work of any kind within the scope of his or her employment for the Company within one (1) year preceding the date of his or her resignation or termination of employment.

    Exhibit 3, p. 3.

23.    The non-solicitation covenant in the Buck Agreement (Paragraph 4) further

prohibited the following conduct:

During employment with the Company and for a period of two (2) years after the voluntary or involuntary termination of Manager's employment with the Company, **Manager shall not, directly *or indirectly*,** on his or her own behalf or

on behalf of any third party:

> (a) recruit, solicit, hire, or attempt to recruit, solicit or hire any person who is employed by the Company, nor induce or attempt to induce any such employee to leave the employment of the Company. Manager further acknowledges that such other employees of the Company may be similarly bound by agreements with the Company and that Manager shall not induce or attempt to induce, either directly or indirectly, a breach of the duties owed by such other employees to the Company.

> (b) sell, rent, provide or attempt to sell, rent, or provide within the Restricted Area any products or services in competition with or similar to those products or services which the Company sold, rented or provided, or attempted or proposed to sell, rent or provide, during Manager's employment at the Company, to: (i) any person, company or other entity to whom Manager sold, rented, provided or attempted or proposed to sell, rent, or provide such Company products or services at any time during the last one (1) year of Manager's employment with the Company, or (ii) any person, company or other entity about whom Manager received Confidential Information while employed by the Company, or (iii) any person, company or other entity with whom Manager had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Manager's employment with the Company.

> (c) divert away from the Company current, former or potential customers of the Company to whom Manager sold, rented, provided or attempted or proposed to sell, rent or provide the Company's products or services at any time during the last one (1) year of Manager's employment at the Company, or about whom Manager received Confidential Information while employed by the Company, or with whom Manager had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Manager's employment at the Company, nor seek to induce or encourage such customers to modify or not renew their business relationship with the Company.

> Exhibit 3, p. 4.

24.     While employed by ISI, Reuter served as a Senior Vice President and had full access to ISI's Confidential Information.  Shepherd likewise had access to ISI's Confidential Information and Buck was provided substantial amounts of BES's Confidential Information. Additionally, ISI and BES, respectively, provided Reuter, Shepherd, and Buck with ongoing

access to customers; customer pricing; customer service requirements; financial statements and reports; pricing and market strategy; information about the abilities and capabilities and compensation of employees; and sales and marketing information, in order to perform their jobs.

25.      In or about July 2018, Brand learned that the information provided concerning Loenbro and whether it competed against Brand might not have been exactly accurate. As it turns out, in mid-2018, RDS began to solicit numerous employees of Brand and customers of Brand.  RDS was successful in luring various Brand employees to join RDS and was able to secure work from several Brand customers, to the detriment of Brand.

26.      Accordingly, Brand began to investigate RDS and learned that RDS did in fact compete directly with Brand, shared an address with Loenbro in Montana (although it was originally registered as a Texas LLC), and that a Loenbro employee served as RDS's agent for service.  This held grave ramifications for Brand because if RDS was affiliated with Loenbro then Reuter, Shepherd, and Buck were in violation of their noncompetition covenants and, at the very least, in violation of indirectly soliciting employees and customers of Brand contrary to their obligations under the non-solicitation covenants.

27.      Brand set about trying to determine the connection and nature of the affiliation between RDS and Loenbro by contacting Reuter in July 2018 and ultimately interfacing with Loenbro's counsel thereafter when she responded on Reuter's behalf.  Such counsel never answered the ultimate question of the nature of the affiliation between RDS and Loenbro. She also provided no information or explanation for why the two supposedly different companies shared a business address in Montana and a Loenbro employee served as RDS's agent for service.

28.     However, the counsel did vaguely state that Loenbro provided "administrative" services for RDS, but did not elaborate on the type of administrative services provided or identify whether or how RDS paid Loenbro for such services.  This was quite a unique revelation because Loenbro is not a payroll, billing, or human resources company and, to Brand's knowledge, does not perform similar services for other companies.

29.     Moreover, while the counsel indicated that Loenbro did not operate the day-to-day business of RDS, she refused to answer Brand's questions about whether Loenbro is an owner in RDS, whether Loenbro directs or otherwise controls the direction of RDS, whether Loenbro finds prospective work and/or prepares the bids and proposals for RDS, and whether RDS provides services to any companies other than Loenbro or through Loenbro.  The questions the counsel conspicuously neglected to answer spoke volumes.

30.     Based on the foregoing and the questions pose by Brand that the counsel neglected to answer, which would have been factually easy questions to answer, the only reasonable conclusion that can be reached is that RDS serves as an affiliate of Loenbro, receives assistance from Loenbro, and performs services and provides products to customers that directly compete with those of Brand.  Moreover, RDS, with Loenbro's blessing and assistance, is soliciting Brand's employees and customers and securing business historically performed by Brand.

31.     ISI's customers have also reported that RDS representatives openly refer to themselves as "the best ISI has to offer," meaning that RDS is comprised of ISI's key employees.

32.     Compounding matters, on information and belief, ISI has already lost numerous, large bids to RDS where RDS's submissions undercut ISI's bids by $1,000.00 (or less), which indicates that RDS possesses and is unlawfully utilizing ISI's confidential formulas, estimates,

customer lists, pricing, and/or methodologies as part of its own bid submissions.  On information and belief, this information was provided to RDS and/or Loenbro by Reuter, Shepherd, and Buck.

33.     For example, and although Brand's forensic investigation has only just begun and remains ongoing, Brand recently discovered that shortly before Shepherd resigned from ISI, he installed and synced a "Microsoft OneDrive," which is a cloud-based storage system, to his company issued laptop.  After installing the program and leading up to just days before he resigned, Shepherd uploaded over *100 files* to the OneDrive that included highly confidential information created between January 2014 and June 2018.  Because OneDrive is a cloud-based account, its contents can be accessed from any Internet-connected computer by any user with the proper credentials.

34.     Brand's forensic review has also uncovered extensive evidence that Shepherd was forwarded numerous e-mails regarding ISI's business from his work issued e-mail to his personal e-mail account at "kshepherd0003@gmail.com."  Brand has only just begun to review this data, but based on file names, the e-mails appear to contain ISI's highly confidential, proprietary information.

35.     All of these connections and activities of RDS with Loenbro's administrative and other support result in the necessary conclusion that Loenbro is conducting business, or at a bare minimum, benefitting from RDS's work that competes with Brand.  Therefore, Reuter, Shepherd, and Buck are in violation of not only their non-disclosure and non-compete covenants, but also their non-solicitation covenants.

36.     Upon information and belief, Reuter, Shepherd, and Buck all knew of Loenbro's affiliation or impending affiliation with RDS, its competition with ISI and BES, and its

-14-

solicitation of ISI and BES's employees and customers.  Further, upon information and belief, after concluding his employment with ISI Reuter has directly or indirectly solicited several ISI and BES employees about joining him at Loenbro, including Shepherd and Buck.

37.    Additionally, Loenbro was initially aware and has more recently been reminded of the restrictive covenants in the agreements signed by the former Brand employees.  Because Loenbro has refused to address and remedy the situation it has tortiously interfered with the restrictive covenants contained in the employees' agreements.

38.    Moreover, the principal of RDS is another former ISI and Brand employee who would have been aware of the agreements that all Brand executives are required to sign, which include non-competition and non-solicitation covenants.  Accordingly, RDS's affiliation with Loenbro, the fact that it provides services and products that compete with those of Brand, and that it is actually soliciting Brand's employees and customers results in the inescapable conclusion that RDS is engaged in a conspiracy with the other Defendants to breach the former employee's restrictive covenants and to tortiously interfere with them, and is further aiding and abetting such breaches.

39.    Notwithstanding his breaches of his Agreement with ISI, Shepherd has asserted that he is owed commissions for work performed in the first quarter of 2018, as well as the second quarter of 2018.  ISI and all other companies within the BrandSafway group of companies have a strict policy and practice that employees must be employed at the time bonus or commission payments are due to be entitled to such payments.  The only exception to this strict practice is if the employee was terminated by the company without cause.  Since Shepherd voluntarily resigned from BrandSafway and was not terminated without cause this exception does not apply and, consequently, he is not entitled to the commission payments.

40.     In addition, Shepherd's Agreement expressly provides that his right to receive salary, wages, and other benefits paid in connection with his employment with the company is contingent on his compliance with the terms of his Agreement, which include the confidentiality, non-competition, and non-solicitation restrictive covenants addressed above.  Since Shepherd is presently in violation of these covenants as further specifically addressed above he has foregone his right to receive the monetary consideration that otherwise would be provided by the company, including his commissions and all other forms of compensation and benefits.

## V.
## CAUSES OF ACTION

### First Cause of Action:  Defend Trade Secrets Act (18 U.S.C. § 1832)—All Defendants

41.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

42.     During the course of their relationships with Reuter, Shepherd, and Buck were provided access to substantial amounts of ISI and BES's confidential information, including, but not limited to, pricing data, costs, margins, vendors, estimates, customer information, and customer lists.

43.     ISI and BES's confidential information is not available to the general public and is closely guarded by ISI and BES.  ISI and BES keep such information strictly confidential in order to maintain a competitive advantage.

44.     ISI and BES's confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), because the information is not generally known outside of ISI and BES's businesses, the information is not generally known by employees and others involved in ISI and BES's businesses, ISI and BES have taken reasonable measures to guard the secrecy of the information, the information is of great value to ISI and

BES and their competitors, ISI and BES have invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because ISI and BES continuously uses the information in their businesses.

45.     On information and belief, Reuter, Shepherd, and Buck unlawfully misappropriated, with the intent to use in a competing business, ISI and BES's trade secrets and confidential information while still employed at ISI and BES and have used and/or are using that information at Loenbro and/or RDS.

46.     Unless restrained, Reuter, Shepherd, and Buck will continue to use, divulge and/or otherwise misappropriate ISI and BES's trade secrets and confidential information. Indeed, on information and belief, Reuter, Shepherd, and Buck have already disclosed ISI and BES's trade secrets and confidential information to Loenbro and/or RDS, who has used that information to compete directly against ISI and BES.

47.     All Defendants have utilized the unlawfully obtained trade secrets and confidential information to unfairly compete and solicit ISI and BES's customers, and should not be able to reap the benefits of their unlawful conduct.

48.     As such, Defendants, acting in concert, are using ISI and BES's trade secrets and confidential information in order to unfairly compete with ISI and BES.

49.     Defendants' continued possession and use of ISI and BES's trade secrets and confidential information demonstrates that Reuter, Shepherd, and Buck have no intention of complying with the law, and that Loenbro and/or RDS will continue to facilitate their knowing theft and misuse of ISI and BES's trade secrets and confidential information.

50.     Naturally then, ISI and BES requests an order enjoining Defendants from using any of ISI and BES's trade secrets and confidential information, and from disclosing ISI and

BES's trade secrets and confidential information to anyone not authorized to receive it, as well as an order prohibiting Defendants from engaging in business with ISI and BES's current or former customers for which Defendants unlawfully solicited with misappropriated ISI and BES's trade secret and confidential information.

51.     ISI and BES also requests an order requiring Defendants to return any and all ISI and BES's trade secrets and confidential information to ISI and BES.

52.     Finally, Defendants' misappropriation of ISI and BES's trade secrets and confidential information has been willful and malicious, and ISI and BES have incurred significant damages as a result of Defendants' misappropriation of ISI and BES's trade secrets and confidential information.

53.     Defendants' actions have damaged ISI and BES's goodwill, reputation, and legitimate business interests.

54.     ISI and BES are therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

### Second Cause of Action:  Breach of Contract—Reuter, Shepherd, and Buck

55.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

56.     The Agreements – attached as Exhibits 1-3 – between ISI and Reuter, ISI and Shepherd, and BES and Buck, are valid and enforceable contracts, as are the Confidentiality, Non-Competition, and Non-Solicitation provisions included within the Agreements.

57.     By their own actions, Reuter, Shepherd, and Buck breached their respective Agreements by, among other things: (a) accepting and commencing employment with Loenbro, a company that planned to and/or did actually compete directly against Brand; (b) failing to return

and/or misappropriating Brand's information; and (c) directly or indirectly soliciting Brand's customers and/or employees.

58.     The breaches of the Agreements injured ISI and BES and damaged such companies in an amount within the jurisdictional limits of this court.

59.     Reuter, Shepherd, and Buck's breach of their Agreements will cause ISI and BES to sustain actual damages, which are not subject to precise calculation at this time.  To the extent ISI and BES can prove such damages, or any part of such damages, with the degree of reasonable certainty required by law, ISI and BES are entitled to recover the amount of such damages they sustained.

60.     As a further proximate result of Reuter, Shepherd, and Buck's wrongful conduct and breach of their Agreement, ISI and BES have been injured, irreparably and otherwise, and are threatened with additional and ongoing injuries.  As a result, ISI and BES are also entitled to an order restraining Reuter, Shepherd, and Buck, and all those acting in concert with them, preliminary and permanently, from any further violations of the terms and conditions of their Agreements.

61.     As a result of Reuter, Shepherd, and Buck's breaches of contract, as more fully described above, ISI and BES are entitled to recover the reasonable and necessary attorneys' fees and costs incurred in the prosecution of this lawsuit.  Because each claim asserted by ISI and BES is inextricably intertwined with one another and it would be impossible to separate the fees attributable solely to the breach of contract claims, ISI and BES are entitled to recover all of their reasonable and necessary fees incurred in this matter.

### Third Cause of Action: Tortious Interference With Contracts—Reuter

62.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

63.     On information and belief, Reuter tortiously interfered with ISI and BES's contracts with its employees, including, Shepherd and Buck.  This interference was willful and intentional and is a proximate cause of damages to ISI and BES.

64.     Actual damages based on Reuter's tortious interference are not subject to precise calculation at this time, but are in excess of the minimum jurisdictional limits of this Court.  To the extent ISI and BES prove such damages, or any part of such damages, with the degree of reasonable certainty required by law, ISI and BES are entitled to recover the amount of such damages they sustained.  ISI and BES also asks that Reuter be required to disgorge all compensation and remuneration he received in connection with securing the services of its employees, including Shepherd and Buck, from his wrongful tortious interference.

### Fourth Cause of Action:  Tortious Interference With Contracts and Business Relationships—Loenbro

65.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

66.     Loenbro tortiously interfered with ISI and BES's contracts and business relationships, including unlawfully tortiously interfering with Reuter, Shepherd, and Buck's Agreements.

67.     Loenbro was aware of the obligations that ISI and BES's employees, including Reuter, Shepherd, and Buck, owed to ISI and BES as a result of their respective Agreements, but nevertheless offered them employment, hired them, and on information and belief placed them in positions where the knowledge, experience, and information they acquired through their

employment with ISI and BES could be best used to compete against Brand, whether directly or indirectly. This interference was willful and intentional and is a proximate cause of damages and loss to ISI and BES.

68.     Actual damages based on Loenbro's interference are not subject to precise calculation at this time but are in excess of the minimum jurisdictional limits of this Court.  To the extent ISI and BES prove such damages, or any part of such damages, with the degree of reasonable certainty required by law, ISI and BES are entitled to recover the amount of such damages it sustained. ISI and BES also ask that Loenbro be required to disgorge all profits it received in connection with the work performed by its former employees, including Reuter, Shepherd, and Buck, and compensate ISI and BES for all damages resulting from its wrongful interference with ISI and BES's employee and business relationships.

## Fifth Cause of Action: Declaratory Judgment--Shepherd

69.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

70.     ISI and BES seek a declaration to declare the rights, status and/or other legal relations between themselves and Shepherd, ISI and BES's obligation to pay the commissions claimed by Shepherd, and Shepherd's right to receive such commissions so as to eliminate uncertainties concerning their rights and obligations.

71.     Shepherd has expressly asserted that he is entitled to receive commissions for his work in the first quarter of 2018 and the second quarter of 2018.  He makes these assertions notwithstanding the fact that it is ISI's strict policy and practice and that of every other member of the BrandSafway group of companies that employees must be actively employed at the time bonuses or commissions are due to be entitled to receive such types of incentive compensation. Indeed, Shepherd received a substantial salary and also was entitled to incentives in the form of

commissions if he was employed at the time they were due and payable.  Shepherd resigned his employment before any of the commissions he seeks were due and payable and thus is not entitled to them.

72.     Additionally, Shepherd's Agreement expressly provides that his right to receive salary, wages, and other benefits paid in connection with his employment with the company is contingent on his compliance with the terms of his Agreement, which include the confidentiality, non-competition, and non-solicitation restrictive covenants.  Because Shepherd is presently in violation of these covenants he has foregone his right to receive the monetary consideration that otherwise would be provided by the company, including his commissions and all other forms of compensation and benefits.

73.     Accordingly, ISI and BES request that the Court declare that Shepherd has foregone any right to receive the claimed commissions based on his conduct in untimely resigning his employment and decision to violate the restrictive covenants contained in his Agreement and that neither ISI, BES, nor any other company included in the BrandSafway group of companies is obligated to pay Shepherd any commissions that he has not already received.

<u>**Sixth Cause of Action: Exemplary Damages-–All Defendants**</u>

74.     ISI and BES re-allege and incorporate by reference the allegations made in the above paragraphs.

75.     Defendants have acted with the specific intent to cause substantial injury to ISI and BES.  Therefore, ISI and BES are entitled to an award of exemplary damages in an amount in excess of this Court's minimum jurisdictional limits.

**VI.**
**<u>DEMAND FOR JURY</u>**

76.     ISI demands a jury trial.

## VII.
## <u>CONCLUSION</u>

For the foregoing reasons, Industrial Specialists, LLC and Brand Energy Solutions, LLC pray that Richard Reuter, Kenneth Shepherd, Thomas Buck, Loenbro Equipment, Inc., and RDS Industrial Service, LLC be cited to appear and answer and, upon trial of this cause, that it enter relief in ISI and BES's favor as follows:

a.     Compensatory damages in an amount to be determined at trial;

b.     Disgorgement of all profits received by Defendants as a result of their wrongful conduct;

c.     Disgorgement of Reuter, Shepherd, and Buck's salary, commissions, bonuses and expense reimbursements received while they were in violation of their non-competition obligations and they were soliciting and recruiting ISI and BES's employees and customers, whether directly or indirectly;

d.     A declaration that Shepherd is not entitled to receive the commissions he is claiming;

e.     An order restraining Reuter, Shepherd, and Buck, and all those acting in concert with them, preliminary and permanently, from violating the terms and conditions of their Agreements;

f.     Punitive damages;

g.     Pre and post judgment interest as provided by law;

h.     Attorney's fees in an amount to be determined at trial;

i.     All costs and expenses incurred to pursue the claims against Defendants; and

j.     Such other and further relief in law or in equity to which ISI and BES may be justly entitled.

Dated:  April 29, 2019.

Respectfully submitted,

*/s/ Jesse M. Coleman*

Jesse M. Coleman
Texas Bar No. 24072044
jmcoleman@seyfarth.com
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002-2812
Telephone:  (713) 225-2300
Facsimile:  (713) 225-2340

Robert C. Stevens (Georgia Bar No. 680142)
(*Motion for Admission Pro Hac Vice to be Filed*)
bstevens@seyfarth.com
Eric F. Barton (Georgia Bar No. 040704)
(*Motion for Admission Pro Hac Vice to be Filed*)
ebarton@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

**ATTORNEYS FOR PLAINTIFFS
INDUSTRIAL SPECIALISTS, LLC AND
BRAND ENERGY SOLUTIONS, LLC**